IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00873-DME-CBS

COBRA NORTH AMERICA, LLC, a Colorado Limited Liability Company,
doing business as Pyrolance North America,

      Plaintiff - Counter Defendant,

v.

COLD CUT SYSTEMS SVENSKA AB, a Swedish company,

      Defendant - Counter Claimant.


AMERICAN COBRA AB, a Swedish company,

      Interested Party.

---

## ORDER

---

      This matter is before the Court on three motions: 1) the motion of Plaintiff Cobra North America, LLC, doing business as Pyrolance North America ("Cobra North America (Pyrolance)"), to join American Cobra AB as a party-plaintiff pursuant to Fed. R. Civ. P. 19 or 20 (Doc. 82); 2) American Cobra AB's motion to confirm its Swedish arbitration award against Defendant Cold Cut Systems Svenska AB ("CCS") (Doc. 83); and 3) CCS's motion, made pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all of Cobra North America (Pyrolance)'s claims against it (Doc. 95).  After considering the parties' pleadings and conducting a

hearing,[1] the Court GRANTS the motions to join American Cobra AB as a party-plaintiff (Doc. 82) and to confirm American Cobra AB's arbitration award (Doc. 83).  The Court DENIES in full CCS's motion to dismiss (Doc. 95).

## I. BACKGROUND

Briefly stated, Cobra North America (Pyrolance) alleges the following: CCS designed and developed the Cobra, a rifle-like device used by firefighters to cut through burning structures using a combination of water and aggregate. CCS then patented this device in several countries, including the United States. In September 2006, CCS granted American Cobra AB an exclusive license to use CCS's U.S. patent, as well as its trademarks, copyrighted materials and "know-how," in the United States and Canada ("Licensing Agreement"). American Cobra AB is a Swedish company formed by American Kevin Spencer. American Cobra AB, in turn, sublicensed its rights under the Licensing Agreement to Plaintiff Cobra North America (Pyrolance) ("Sublicensing Agreement"), a Colorado company also formed by Spencer.  Cobra North America (Pyrolance) entered into a contract with Fluid Power Products ("FPP") to manufacture a Cobra-like device, the Pyrolance®.  The controversy underlying this litigation stems, in part, from CCS's decision to terminate the Licensing Agreement in April 2008 because, among other reasons, Cobra North

---

[1]During the hearing on these motions, the Court permitted the parties to argue at length regarding a number of matters pertinent to this case, but not necessarily relevant to the disposition of the specific issues presented by the three motions at issue here.  Counsel's argument, however, will serve to inform the Court if and when the parties raise the other matters in subsequent motions.

America (Pyrolance) was marketing and selling the Pyrolance® outside the United States and Canada.

Previously, the Court stayed this litigation pending arbitration proceedings occurring in Sweden between CCS and American Cobra AB regarding CCS's termination of the Licensing Agreement.  In May 2009, the Swedish arbitration panel entered a decision generally favorable to American Cobra AB.  Following that arbitration award, the parties filed with this Court the three motions at issue here.

## II.  PENDING MOTIONS

### A.     Motion to join American Cobra AB as a party-plaintiff

Cobra North America (Pyrolance) moves to join American Cobra AB as a party-plaintiff under either Fed. R. Civ. P. 19 or 20.  (Doc. 82.)  American Cobra AB joins this motion.

The Court concludes that, under Rule 19(a)(1)(B)(i), American Cobra AB is a party required to be joined, if feasible.  That rule provides that

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> . . . .
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest . . . .

Fed. R. Civ. P. 19(a)(1)(B)(i).

Clearly American Cobra AB, as the licensee and sublicensor of CCS's United States patent, has an interest in the subject of this litigation between Cobra North America (Pyrolance) and CCS—the licensing and sublicensing arrangement involving that patent.  Further, the parties used almost identical language in drafting both the Licensing and Sublicensing Agreements; thus, the interpretation of one of these agreements may well affect the interpretation to be given the other.  Moreover, American Cobra AB has obtained an arbitration award against CCS which directly addresses, interprets and applies the Licensing Agreement between those two parties.  American Cobra AB has an interest in seeing that award enforced, and in preventing an inconsistent judgment being entered in this litigation.  For these reasons, disposing of Cobra North America (Pyrolance)'s claims asserted against CCS in this litigation without American Cobra AB's participation might impair or impede American Cobra AB's ability to protect its interest in this licensing arrangement.  <u>See Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel</u>, 883 F.2d 890, 891, 893 (10th Cir. 1989) (holding, in action involving plaintiff and the Citizen Band Potawatomi Tribe, that Tribe was a party required under Rule 19(a) to be joined if feasible, where plaintiff was seeking to validate its contract with the Tribe, while the Tribe, in a separate action, was seeking instead to have the agreement declared void; noting that "[t]he Tribe's interest in the validity of this contract, to which it is a party, would be directly affected by the relief" plaintiff seeks); <u>cf. Rainville Co. v. Consupak, Inc.</u>, 407 F. Supp. 221, 223-25 (D. N.J. 1976) (holding licensee who transferred license to the plaintiff, but who still

4

claimed an interest in the license, was a party who needed to be joined, if feasible).[2]

American Cobra AB, therefore, is a party required to be joined, if feasible. The Court further concludes that it is feasible to join American Cobra AB as a party to this litigation.  American Cobra AB concedes it is subject to service of process.  And joinder of American Cobra AB will not defeat this court's federal question subject-matter jurisdiction, see 9 U.S.C. §203, 28 U.S.C. §§ 1331, 1338, 1367.  The Court, therefore, GRANTS Cobra North America (Pyrolance)'s motion to join American Cobra AB as a party-plaintiff.[3]

**B.     Motion to confirm Swedish arbitration award**

Now a party-plaintiff, American Cobra AB moves this court, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958, codified at 9 U.S.C. §§ 201-08, to confirm the now-final award entered by the Swedish arbitration panel in the proceedings between CCS and American Cobra AB.[4]  (Doc. 83.)  Cobra North America (Pyrolance) joins this motion.

---

[2]Although Rule 19 was revised effective in December 2007, those revisions were "stylistic only."  See Republic of Philippines v. Pimentel, 128 S. Ct. 2180, 2184-85 (2008).  Therefore, the Court continues to rely upon case law decided under the earlier version of the rule.  See id.

[3]Although Rule 19(a)(1)(B)(i) provides the most straightforward justification for joinder, the Court concludes that joinder would also be appropriate under both Rule 19(a)(1)(A) and Rule 20(a)(1)(A).

[4]During the hearing, the parties represented to the Court that the time for either party to the Swedish arbitration, CCS and American Cobra AB, to challenge the award in the courts of Sweden has now expired.

9 U.S.C. § 207 specifically provides that,

> [w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award against any other party to the arbitration.  The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

(Emphasis added.)

The award entered in the Swedish arbitration between CCS and American Cobra AB falls under the Convention—"[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered commercial . . . ," but that is not "[a]n agreement or award arising out of such a relationship which is entirely between citizens of the United States . . . ," 9 U.S.C. § 202.  And this court has subject-matter jurisdiction over American Cobra AB's confirmation request: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States . . . shall have original jurisdiction over such an action or proceedings, regardless of the amount in controversy."  Id. § 203.  Furthermore, CCS challenges neither venue in this court, nor this court's personal jurisdiction over it.

Finally, "'[t]he party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies.  Art. V(1).  The burden is a heavy one, as the showing required to avoid summary confirmance is high.'"  Zeiler v. Deitsch, 500 F.3d 157, 164 (2d Cir. 2007) (quotation omitted).  But here, CCS fails to invoke any of the seven

6

defenses the Convention makes available to prevent the confirmation of the arbitration award.  In fact, CCS "does not contest that the Award was properly issued" and acknowledges that American Cobra AB "could likely confirm the Award in a separate action."  (Doc. 96 at 11.)  CCS argues, instead, only that by confirming that award as part of this litigation, Cobra North America (Pyrolance) is seeking to "expand" American Cobra AB's award to resolve Cobra North America (Pyrolance)'s claims asserted against CCS in this action.  But the preclusive effect of American Cobra AB's arbitration award on Cobra North America (Pyrolance)'s claims at issue in this litigation is a separate issue that has not yet been squarely presented to the Court by motion.

     Under these circumstances, this Court must confirm the Swedish arbitration award.  See 9 U.S.C. §207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.") (emphasis added); see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005); China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc., 379 F.3d 796, 799 (9th Cir. 2004); Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 287-88 (5th Cir. 2004).  Therefore, the Court GRANTS American Cobra AB's motion to confirm the arbitration award entered in the Swedish arbitration proceedings between CCS and American Cobra AB.  The Court does not express any view as to the preclusive effect that arbitration award might have in these proceedings.

**C.    Motion to dismiss Cobra North America (Pyrolance)'s claims**

CCS has filed a motion, made pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice all five claims Cobra North America (Pyrolance) has asserted against CCS.  (Doc. 95.)  Notwithstanding that this is a Rule 12(b)(6) motion, to be resolved on the allegations Cobra North America (Pyrolance) made in its amended complaint, see Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007), the parties have included additional materials addressing CCS's motion to dismiss.  The parties have also relied, in their pleadings, on evidence presented to the Court during the earlier hearing on the parties' motions for preliminary injunctions.  The Court, however, declines to convert CCS's motion to dismiss into one for summary judgment at this stage in the proceedings.  See Fed. R. Civ. P. 12(d).  Therefore, the Court will resolve the motion to dismiss without resort to these additional materials.  In doing so, however, the Court can still rely on the Licensing and Sublicensing Agreements submitted to the Court because the amended complaint refers to those documents, the parties do not challenge the authenticity of the agreements submitted to the Court, and these documents are central to Cobra North America (Pyrolance)'s claims.  See Alvarado, 493 F.3d at 1215 (noting district court, in resolving Rule 12(b)(6) motion, may consider documents referred to in the complaint if the documents "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity") (quotation omitted); see also Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1253-54 (10th Cir. 2005).

8

In reviewing CCS's motion to dismiss, then, the Court will accept as true all of Cobra North America (Pyrolance)'s well-pled factual allegations included in the amended complaint, construing those allegations in the light most favorable to the plaintiff, Cobra North America (Pyrolance).  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In its motion to dismiss, CCS asserts three reasons why this court should dismiss Cobra North America (Pyrolance)'s claims against it.[5]

**1.  Cobra North America is obligated to arbitrate its claims against CCS**

CCS first argues that "[a]ll counts" Cobra North America (Pyrolance) alleged against it "must be dismissed because they are subject to the arbitration provision set out in the operative agreements."[6]  (Doc. 95 at 1.)

---

[5]During argument to the Court, CCS asserted several other reasons why it believes Cobra North America (Pyrolance)'s claims are legally deficient and should be dismissed.  In this order, however, the Court addresses only the specific grounds for dismissal CCS asserted in its written motion to dismiss.

[6]The question of "[w]hether a party is bound by an arbitration agreement is generally considered an issue for the courts, not the arbitrator, '[u]nless the parties clearly and unmistakably provide otherwise.'"  Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 354 (5th Cir. 2003) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)); see also Dwayne E. Williams, Binding Nonsignatories to Arbitration Agreements, 25 Franchise L. J. 175, 182 (Spring 2006) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (continued...)

"[A]rbitration is a creature of contract law." <u>E.I. Dupont de Nemours & Co.</u>

<u>v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.</u>, 269 F.3d 187, 194 (3d

Cir. 2001); <u>see also</u> <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. 279, 294 (2002);

<u>Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.</u>, 489

U.S. 468, 478 (1989); <u>Hardin v. First Cash Fin. Servs., Inc.</u>, 465 F.3d 470, 474-

75 (10th Cir. 2006).  The duty to arbitrate, therefore, generally arises from a

written agreement between the two parties involved in a dispute that they will

arbitrate that controversy.  <u>See</u> 9 U.S.C. § 206 (providing for orders to compel

foreign arbitration "in accordance with the agreement" to do so); <u>see also</u>

<u>Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.</u>, 556 F.3d 459,

468 (6th Cir. 2009) (discussing Convention's requirement for such a written

agreement); <u>Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration</u>

<u>Int'l, Inc.</u>, 198 F.3d 88, 92 (2d Cir. 1999) (same).  Here, there is no such written

agreement between CCS and Cobra North America (Pyrolance).

Nevertheless, CCS, citing generally to "United States and Swedish law,"

argues that Cobra North America (Pyrolance) is still bound to arbitrate its claims

against CCS, pursuant to the arbitration clause in the Licensing Agreement

entered into between CCS and American Cobra AB.  But Cobra North America

---

[6](...continued)
(2002), and <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 943-46
(1995)); <u>cf.</u> <u>Sheet Metal Workers' Int'l Ass'n, Local Union No. 2 v. McElroy's,</u>
<u>Inc.</u>, 500 F.3d 1093, 1096 (10th Cir. 2007) (whether the parties submitted a
particular dispute to arbitration is for the court to decide).  Here, the parties do
not argue, and the Court has not found any indication, that the Licensing
Agreement "clearly and unmistakably" provided that this issue should be
resolved by a Swedish arbitration panel.

(Pyrolance) did not sign and is not a party to that Licensing Agreement. Ordinarily, a party is not bound by an agreement to which it did not assent, see World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240,1244 (11th Cir. 2008); Bridas, 345 F.3d at 353, "unless [that party] is bound under traditional principles of contract and agency law to be akin to a signatory to the underlying agreement," E.I. Dupont, 269 F.3d at 194 (quotation omitted); see also Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006); Bridas, 345 F.3d at 356.  Courts have recognized several such contract or agency theories that might support enforcing an arbitration agreement against a non-signatory such as Cobra North America (Pyrolance).  See World Rentals, 517 F.3d at 1244; Comer, 436 F.3d at 1101; Bridas, 345 F.3d at 356; E.I. Dupont, 269 F.3d at 196; see also Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1902 (2009).  The only such theory CCS invokes here is its contention that Cobra North America (Pyrolance) is a third-party beneficiary to the Licensing Agreement.  There is, however, a strong presumption against third-party beneficiary status.  See Williams, supra, at 179; see also InterGen N.V. v. Grina, 344 F.3d 134, 146 (1st Cir. 2003) (noting "the law requires special clarity to support a finding that the contracting parties intended to confer a benefit on a third party").  To succeed on that theory, CCS bears the burden of establishing, among other things, that the parties to the Licensing Agreement—CCS and American Cobra AB—intended, at the time they made their agreement, that Cobra North America (Pyrolance) be a third-party beneficiary of their Licensing Agreement.  See E.I. Dupont, 269 F.3d at 196; see

11

<u>also</u> <u>Saudi Am. Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.)</u>, 558 F.3d 234, 241 (3d Cir. 2009); <u>Comer</u>, 436 F.3d at 1102; <u>Bridas</u>, 345 F.3d at 355, 362; 1 Domke on Comm'l Arb. § 13:9; Williams, <u>supra</u>, at 178.  CCS never attempts to make such a showing here.  And Cobra North America (Pyrolance) expressly eschews that its claims are premised on its being a third-party beneficiary of the Licensing Agreement.

Further, the Court's own review of the terms of that agreement does not suggest that the parties to the Licensing Agreement had such an intent.  <u>See</u> <u>Bridas</u>, 345 F.3d at 355 (considering agreement); <u>InterGen</u>, 344 F.3d at 146 (same).  It is not enough for CCS to show that Cobra North America (Pyrolance) will be "directly affected by the parties' conduct" in relation to the Licensing Agreement, or that it has a "substantial interest in the contract's enforcement." <u>Bridas</u>, 345 F.3d at 362; <u>see also</u> <u>InterGen</u>, 344 F.3d at 147.  Therefore, because CCS has not established that the parties to the Licensing Agreement, CCS and American Cobra AB, intended at the time they entered that agreement that Cobra North America (Pyrolance) be a third-party beneficiary to the Licensing Agreement, the Court denies CCS's motion to dismiss premised on the argument that Cobra North America (Pyrolance) is a third-party beneficiary to the Licensing Agreement and is thus required to arbitrate all of its claims against CCS in Sweden.[7]

_____

[7]Because the Court concludes that CCS has failed to establish that Cobra North America (Pyrolance) must arbitrate its claims against CCS, we need not address Cobra North America (Pyrolance)'s argument that CCS waived any right

(continued...)

2.    **Mootness**

CCS next asserts that Cobra North America (Pyrolance)'s "requests for

declaratory relief . . . must be dismissed because those requests are now moot

as there is no existing case or controversy" (Doc. 95 at 1), as required by the

Declaratory Judgment Act, see 28 U.S.C. § 2201(a).  To be actionable, a

declaratory judgment claim must involve a dispute that is "definite and concrete,

touching the legal relations of parties having adverse legal interests; and that

[is] real and substantial and admit[s] of specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law

would be upon a hypothetical state of facts.  MedImmune, Inc. v. Genentech,

Inc., 549 U.S. 118, 127 (2007) (quotations, alterations omitted); see also

Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1244 (10th Cir. 2008) (applying

MedImmune).  "Basically, the question in each case is whether the facts alleged,

under all the circumstances, show that there is a substantial controversy,

between parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment."  MedImmune, 549

U.S. at 127 (quotation omitted); see also Surefoot, 531 F.3d at 1244.

In this case, Cobra North America (Pyrolance) asserts two claims for

declaratory relief.  First, Cobra North America (Pyrolance) seeks a declaration

that

(a) Pyrolance is not infringing CCS's [U.S.] Patent by manufacturing,

---

[7](...continued)
it had to compel Cobra North America (Pyrolance) to arbitrate.

>marketing, selling or offering to sell its Pyrolance® device in foreign countries where CCS holds no patent; and (b) Pyrolance is not infringing CCS's Patent by manufacturing, marketing, selling or offering to sell its Pyrolance® device in the U.S. and Canada; and (c) Pyrolance's and FPP's continued performance under the Pyrolance/FPP contract does not infringe the Patent.

(Doc. 41 at 11-12.)  In its motion to dismiss, CCS contends this claim is moot because, "[s]ince the [Swedish arbitration] Award was issued, . . . Cold Cut has not challenged Pyrolance's or FPP's actions as an infringement of Cold Cut's patent."  (Doc. 96 at 13.)

The Court rejects the argument that this claim for declaratory relief is moot.  A party generally cannot voluntarily cease its challenged conduct in order to moot the claims against it.  See New Mexico ex rel. Richardson v. BLM, 565 F.3d 683, 701 (10th Cir. 2009) (noting that "[w]hen a party moots a case by voluntarily changing its own conduct, the Supreme Court instructs us to view mootness arguments with suspicion because the offending party might otherwise resume that conduct as soon as the case is dismissed") (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)). "This voluntary cessation exception" to mootness "derives from 'the principle that a party should not be able to evade judicial review . . . by temporarily altering questionable behavior.'"  Id. at 701-02 (quoting City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n.1 (2001)).

Cobra North America (Pyrolance)'s second claim seeks a declaration that "(a) CCS is not entitled to terminate the Sublicense Agreement based upon the grounds it has asserted; and (b) the Sublicense Agreement remains in full force

14

and effect." (Doc. 41 at 12.)  CCS contends that this claim, too, is moot, because, "since the [arbitration] Award, Cold Cut has not contested the validity of the Sublicense Agreement." (Doc. 96 at 13.)

The Court also declines to dismiss this claim as moot.  As stated above, generally a party cannot voluntarily cease its challenged conduct in order to make moot the claims asserted against it.  See New Mexico ex rel. Richardson, 565 F.3d at 701-02.  While the Swedish arbitration panel concluded CCS improperly terminated the Licensing Agreement, it did so after only addressing the substance of four of the five justifications CCS proffered to justify terminating the Licensing Agreement.  The arbitration panel declined to address the fifth justification only because CCS failed to give Cobra North America (Pyrolance) sufficient notice of that reason.  It is possible that CCS could, at a later date, seek to reassert its fifth justification for termination.  More importantly, the parties clearly disagree as to the preclusive effective the Swedish arbitration award should have on the claims Cobra North America (Pyrolance) asserts against CCS in this litigation.

For these reasons, therefore, the Court concludes there remains an actual controversy between the parties.  The Court, thus, concludes Cobra North America (Pyrolance)'s two declaratory judgment claims are not moot.  Rather, as alleged, there remains a "substantial controversy" here between two parties with "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127 (quotation omitted).

**3.    This court has already ruled in CCS's favor on Cobra North America (Pyrolance)'s claim that CCS intentionally interfered with Cobra North America (Pyrolance)'s contract with FPP**

In its amended complaint, Cobra North America (Pyrolance) alleged that CCS intentionally interfered with FPP's performance of its contract with Cobra North America (Pyrolance).  In support of that claim for damages and injunctive relief asserted under Colorado law, Cobra North America (Pyrolance) further alleged that it "retained FPP as its exclusive United States manufacturer of the patented device," "FPP was able . . . to overcome the manufacturing and defect issues in the original Cobra Device," and develop "[a] new device, the Pyrolance®."  (Doc. 41 at 8.)  Regarding CCS's interference with that contract, Cobra North America (Pyrolance) alleged that,

> [o]n April 14, 2008, CCS delivered to [American Cobra AB] a purported termination notice, wherein CCS declared the License Agreement terminated.  CCS then, on April 18, 2008, immediately and directly contacted FPP by letter.  CCS informed FPP that it considered the License Agreement and the Sublicense Agreement terminated and that CCS would not honor either license agreement.  CCS further directly threatened FPP, and Pyrolance, with immediate legal action for "infringement" unless both companies immediately "suspended" any work whatsoever relating to the patented technology.

(<u>Id.</u> at 8-9.)

In the order denying either party a preliminary injunction, the Court previously held that CCS's conduct in notifying FPP that Cobra North America (Pyrolance)'s sublicense to use CCS's U.S. patent had been terminated did "not appear to be wrongful interference, but instead was an apparent good faith notice to FPP, based upon CCS's terminating the Licensing Agreement."  (Doc. 75 at 24.)  On that basis, CCS now contends the Court should dismiss Cobra

16

North America (Pyrolance)'s intentional interference claim against CCS under Rule 12(b)(6).  But the Court clearly prefaced its earlier decision addressing the preliminary injunction motions by stating that, because "the Federal Rules of Evidence did not apply" to that proceeding, the Court's "factual findings are, of course, preliminary and do not bind the Court in the ultimate resolution of Plaintiff's claims."  (Doc. 75 at 2 n.1.)  See Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003).  Therefore, the Court's order on the preliminary injunction motions does not provide a basis on which to grant CCS's motion to dismiss Cobra North America (Pyrolance)'s claim alleging CCS intentionally interfered with the Cobra North America (Pyrolance)/FPP contractual relationship.

## III.  CONCLUSION

To summarize, the Court GRANTS Cobra North America (Pyrolance)'s motion to join American Cobra AB as a party-plaintiff (Doc. 82), and GRANTS American Cobra AB's motion to confirm the award entered in the Swedish arbitration occurring between CCS and American Cobra AB (Doc. 83).  The Court DENIES, in all respects, CCS's motion to dismiss (Doc. 95).

Dated this   30th   day of November, 2009.

BY THE COURT:

s/ David M. Ebel

_____
David M. Ebel
U. S. Circuit Court Judge

17